Susan D. Fahringer, Bar No. 162978
SFahringer@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

Sunita Bali, Bar No. 274108
SBali@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105
Telephone:  415.344.7000
Facsimile:  415.344.7050

Attorneys for Plaintiffs
Digital Content Protection, LLC and
Warner Bros. Entertainment Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL CONTENT PROTECTION, LLC, a Delaware limited liability company, and WARNER BROS. ENTERTAINMENT INC., a Delaware corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ACE DEAL INC., a California corporation,<br><br>                    Defendant. | Case No.    15-6341<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF BASED ON VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, THE LANHAM ACT, AND CALIFORNIA LAW**<br><br>**JURY TRIAL DEMANDED** |

-1-

Plaintiffs Digital Content Protection, LLC ("DCP") and Warner Bros. Entertainment Inc. ("Warner Bros.") hereby allege as follows:

## I.    NATURE OF THE ACTION

1.      This action seeks damages, injunctive and equitable relief, and other relief for defendant's violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.* ("DMCA"), the Lanham Act, 15 U.S.C. § 1125(a)(1), and California law.

2.      High-Bandwidth Digital Content Protection ("HDCP") is a technological measure that effectively controls access to copyrighted works and protects the rights of copyright owners. HDCP encrypts content as it travels from a wide variety of digital devices, including set-top boxes, Digital Versatile Discs ("DVDs") and Blu-ray players, computers, Digital Video Recorders ("DVRs") and game consoles, to digital display devices, such as high-definition televisions ("HDTVs") (collectively, "Digital Devices").  HDCP is an indispensable content-protection technology in today's increasingly digital audiovisual content ecosystem.

3.      Whether digital audiovisual content is delivered over the Internet, via physical optical discs, by digital broadcast signals, or from digital storage media such as computer hard drives, HDCP encryption technology ensures that this content is protected when it is transmitted from one device to another for ultimate display and enjoyment.  As such, HDCP plays a critical role in linking consumer electronics devices, personal computers, cable and satellite set-top boxes, and other Digital Devices to allow consumers to access and enjoy digital audiovisual content across a wide array of products, all while effectively protecting the rights of copyright owners and controlling access to copyrighted digital content.

4.      HDCP has broad industry support from the major players in the digital content value chain, including major motion picture studios, semiconductor companies, consumer electronics manufacturers and computer companies.  Many copyright owners, including plaintiff

-2-

Warner Bros., require that Digital Devices be protected with HDCP in order to display their copyrighted content, including premium commercial entertainment content that is displayed on Digital Devices such as high-value digital motion pictures, television programs, and video games ("Digital Content").

5.      DCP introduced the first version of HDCP—HDCP 1.0—in 2000.  Since then, DCP has regularly released new versions of HDCP to keep pace with technological developments in the digital audiovisual content industry, including, for example, new interfaces, new display technologies, and the availability of higher resolution Digital Content.

6.      The newest version of HDCP is HDCP 2.2.  HDCP 2.2 provides enhanced security features, including state-of-the-art encryption technology.  HDCP 2.2 also provides additional functionality.  Most importantly, unlike previous versions of HDCP, HDCP 2.2 is capable of encrypting and transmitting ultra-high-definition ("UHD") Digital Content.

7.      UHD is a digital video format that provides resolutions up to four times greater than the high-definition ("HD") format, which is currently the industry standard.  The increase in image resolution from HD to UHD is "a similar jump . . . as the one from [standard resolution] to HD."  Nick Pino, *4K TV and Ultra HD: Everything you need to know*, TechRadar, http://www.techradar.com/us/news/television/ultra-hd-everything-you-need-to-know-about-4k-tv-1048954 (Exhibit A).

8.      Plaintiff  DCP is the owner of all rights in HDCP, including HDCP 2.2. DCP licenses HDCP to over 550 Digital Device makers, purchasers, and resellers of HDCP-compliant devices, and Digital Content owners worldwide, including Warner Bros., and DCP receives administrative and licensing fees under such license agreements.

9.      Plaintiff Warner Bros. owns or controls copyrights in many of the most successful and critically acclaimed movies and recorded television programs released in the United States

-3-

and worldwide.  Warner Bros. has invested billions of dollars to create and distribute Digital

Content to consumers, has licensed it for display on Digital Devices, and has a license to use

HDCP to control access to and to protect its rights in copyrighted Digital Content.

10.     Defendant Ace Deal Inc. ("Ace Deal") makes, imports, offers to the public,

provides and otherwise traffics in devices marketed under the "Panlong" brand name that are

designed to circumvent HDCP and to eliminate HDCP's access controls and protections.  The

specific devices at issue in this action are identified in paragraph 54 and referred to collectively in

this Complaint as the "Panlong Devices."

11.     The Panlong Devices are intended to circumvent HDCP encryption and do

circumvent HDCP encryption.

12.     The Panlong Devices harm copyright owners like Warner Bros. because they

enable Digital Content to be displayed without the protections of HDCP, thereby enabling users

to access copyrighted works, make and/or distribute copies of copyrighted works, create

derivative works of copyrighted works, or publicly perform copyrighted works, all without the

permission of the copyright owner.

13.     The Panlong Devices harm DCP because, among other things, they undermine the

effectiveness of HDCP, lower the value of HDCP, and thereby jeopardize DCP's ability to license

HDCP to Digital Device manufacturers and Digital Content owners.

14.     The Panlong Devices give rise to additional and unique harms to the extent that

they circumvent HDCP 2.2, the newest version of HDCP.

15.     HDCP 2.2 is the only widely adopted, industry-approved technological measure

for protecting UHD content transmitted to display devices.  If HDCP 2.2 is compromised, then it

will become vastly easier to access, copy, reproduce, and perform UHD content without the

authority of the copyright owner.  As a result, Digital Content owners will be discouraged from

-4-

creating and distributing UHD content, Digital Device makers will be discouraged from manufacturing and selling devices that display UHD content, and consumers will be deprived of the benefits of UHD.

16.     Moreover, copyright owners like Warner Bros. will be deprived of the benefits of providing UHD content, including the profits from providing such content, and DCP will be deprived of the benefits of licensing HDCP 2.2 to Digital Device makers and Digital Content owners who would otherwise adopt the UHD format.

17.     Unless enjoined, Ace Deal will continue its unlawful actions and cause further damage and irreparable injury to plaintiffs.  Plaintiffs bring this action to stop that harm and protect their rights.

## II.     THE PARTIES

18.     Plaintiff DCP is a limited liability company, organized and existing under the laws of Delaware, and having its principal place of business at 3855 SW 153rd Drive, Beaverton, Oregon 97003, United States.

19.     Plaintiff Warner Bros. is a corporation, organized and existing under the laws of Delaware, and having its principal place of business at 4000 Warner Boulevard, Burbank, California 91522, United States.

20.     Defendant Ace Deal is a corporation organized and existing under the laws of California, and having its principal place of business at 1172 Murphy Avenue, Suite 237, San Jose, California 95131.

21.     Ace Deal is responsible for making, importing, offering to the public, providing, advertising, promoting and/or otherwise trafficking in Panlong Devices in this District as well as throughout the United States.

### III.     JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and under 17 U.S.C. §§ 1201 and 1203. This Court has subject matter jurisdiction over plaintiffs' state-law claims under 28 U.S.C. § 1367.

23.     Ace Deal is doing business in the State of California and in this District and is subject to the jurisdiction of this Court.

24.     This Court has personal jurisdiction over Ace Deal because Ace Deal is a resident of the State of California and this District.  In addition, Ace Deal transacts business in the State of California and this District and has specifically marketed toward, sold, distributed, provided, and otherwise trafficked products into the State of California and this District.  Ace Deal regularly and purposely conducts, solicits, and transacts business in this District and, on information and belief, Ace Deal has accepted and fulfilled sales orders from consumers in this District and has offered to sell, has sold, has provided, and has distributed Panlong Devices to consumers in this District.  In addition, Ace Deal has intentionally caused harm to plaintiffs in this District.

25.     Alternatively, this Court has personal jurisdiction over Ace Deal under Federal Rule of Civil Procedure 4(k)(2).

26.     Venue is proper in this District under 28 U.S.C. § 1391.  Alternatively or in addition, venue in this District is proper under 28 U.S.C. § 1400.

### IV.     FACTS

**A.     The HDCP Specification**

27.     The widespread availability of Digital Content has made Digital Content providers increasingly concerned about unauthorized copying, distribution, and use of their copyrighted works.  As a result, Digital Content owners, media manufacturers, and electronics manufacturers

-6-

have implemented a variety of technologies that protect access to high-value Digital Content distributed via different media.

28.     HDCP is an essential link in this chain of protection.  HDCP encryption protects the last stage in the process of distributing Digital Content to consumers: transmission over digital interfaces from Digital Devices that receive such content to Digital Devices that display such content.  Figure 1 shows how HDCP fits into the overall content-protection picture.

**FIGURE 1**



29.     HDCP is interface-independent and is available and can be licensed under the appropriate agreement(s).  HDCP can be used with Digital Devices that connect to each other through a variety of interfaces including wireless interfaces, High-Definition Multimedia Interface ("HDMI"), an interface widely adopted by HDTV manufacturers and other consumer electronics device manufacturers, Display Port, a video interface that provides high-quality visual and digital displays on devices like flat panel LCD computer displays and digital projectors, and

-7-

Universal Serial Bus ("USB"), an industry standard that defines the cables, connectors and communications protocols used in a bus for connection, communication, and power supply between computers and electronic devices.  Further information about the HDCP specifications and interfaces can be found at www.digital-cp.com/hdcp_specifications.

30.    HDCP effectively controls access to copyrighted Digital Content and protects copyright holders' rights in Digital Content, as set forth in the DMCA, by using authentication and encryption techniques to prevent the transmission of unencrypted Digital Content, including the transmission of unencrypted Digital Content to devices that lack HDCP protection.

**B.    HDCP-Protected Systems**

31.    Digital Devices linked together to enable the display of Digital Content can be categorized as "sources," "repeaters," or "sinks."  HDCP protects data as it is transmitted between these types of devices when they are connected via HDCP-protected digital interfaces.

32.    Devices that transmit Digital Content to be displayed (e.g., set-top boxes, computer video cards, and DVD and Blu-ray players) are "sources."  HDCP-protected sources have an HDCP transmitter.  Devices that receive Digital Content, decrypt it, then re-encrypt and re-transmit it (e.g., home theater audiovisual receivers) are "repeaters."  Devices that receive Digital Content and then render it for display (e.g., HDTVs and digital projectors) are "sinks." HDCP-protected sinks have at least one HDCP receiver.

33.    HDCP-licensed sources, repeaters, and sinks can be connected in a tree-shaped topology.  All communication among the devices in the tree is protected by HDCP.  A typical system for a home theater might include several sources connected to a repeater, which is in turn connected to a sink.  Figure 2 illustrates such a system, in which three sources (a Blu-ray player, set-top box, and game console) are connected to a repeater (audiovisual receiver) which is

-8-

connected to a sink (TV).  All communication among the devices in the tree is protected by HDCP (indicated by dotted lines).

**FIGURE 2**



## C.     The HDCP Authentication, Encryption, and Decryption Process

34.     HDCP employs an authentication, encryption, and decryption process to ensure that only HDCP-protected Digital Devices can receive and display protected Digital Content. The process operates as follows:

a.   Before HDCP-protected content is sent, an HDCP-protected transmitting device (a "transmitter") will initiate a "handshake" authentication process to confirm that the receiving device (the "receiver") is HDCP-compliant and therefore authorized to receive the Digital Content.  This process involves several steps whereby the

-9-

transmitter prompts the receiver to demonstrate that the receiver holds valid, secret

device keys held only by HDCP-compliant devices, and the receiver demonstrates

it is authorized to receive the content by sending its DCP-issued key selection

vector, thereby protecting the HDCP private keys, yet allowing authentication to

complete.  During this process, the device private key is not publicly revealed.

    b.  Once the receiver is authenticated, the transmitter encrypts the content, then sends

the encrypted content to the receiver.

    c.  The encrypted content must be decrypted to be displayed.  The encrypted content

can be decrypted only by using an HDCP cipher engine and a session key, both of

which will be present only in HDCP-compliant devices.  This process thereby

ensures that only an HDCP-compliant device can decrypt HDCP-protected

content.

**D.**     <u>**DCP and Its Licensing of the HDCP Specification**</u>

    35.     DCP licenses HDCP to over 550 leading Digital Device manufacturers and Digital

Content owners worldwide, including plaintiff Warner Bros. and other major motion picture

studios.  DCP licenses HDCP to Digital Device manufacturers pursuant to the HDCP License

Agreement ("Adopter Agreement").  Licensees under the Adopter Agreement ensure Digital

Devices they manufacture comply with the HDCP specification and the terms of the Adopter

Agreement, and are interoperable with other products over HDCP-protected interfaces.

    36.     DCP also makes licenses available to owners of Digital Content pursuant to the

HDCP Content Participant Agreement ("Content Participant Agreement"), although owners of

Digital Content do not need a license to require HDCP protection for their valuable content.

A number of Digital Content owners that are licensees pursuant to the Content Participant

Agreement receive certain change management and third-party beneficiary rights.

-10-

37.     DCP receives annual administrative fees and licensing fees from Digital Device manufacturers under the Adopter Agreement and annual administrative fees from Digital Content owners under the Content Participant Agreement.  Further information about HDCP licenses can be found at www.digital-cp.com/licensing.

**E.     Warner Bros. and Its Digital Content**

38.     Warner Bros. is a world-famous entertainment company and a global leader in the creation, production, distribution, licensing, and marketing of Digital Content.  Warner Bros. owns or controls copyrights in an extensive library of works that includes approximately 6,650 feature films and 50,000 television titles, as well as over 14,000 animated titles and 1,500 classic animated shorts.  Warner Bros.' Digital Content includes, for example, the hugely popular *Harry Potter* and *Lord of the Rings* movie series, cartoon megabrands like Looney Tunes and Scooby-Doo, and movie classics like *The Wizard of Oz*.

39.     Warner Bros. has invested billions of dollars and substantial effort to develop, produce, and distribute its Digital Content for viewing on Digital Devices, including Digital Content in the UHD format.  Warner Bros. provides its Digital Content to consumers through tangible media such as DVDs and Blu-ray discs, as well as through digital transmission media such as pay-per-view, electronic sell-through, transactional video-on-demand, and subscription video-on-demand.

40.     The expressive and other distinctive features of Warner Bros.' Digital Content are wholly original to Warner Bros., its licensors or assignors, and, as fixed in various tangible media, are copyrightable subject matter under the Copyright Act.

41.     Warner Bros. holds certificates of copyright registration and/or has secured exclusive licenses or assignments to reproduce, distribute, and license its Digital Content throughout the United States.  Warner Bros.' exclusive rights in its Digital Content include the

-11-

COMPLAINT
CASE NO.
LEGAL129168054.1

rights to reproduce, distribute, or license the reproduction and distribution of its Digital Content in video format in the United States.

42.     Warner Bros. and those acting under its authority have complied with their obligations under copyright law.  Warner Bros., in its own right or as a successor-in-interest, has at all relevant times been and still is the sole owner or otherwise authorized to enforce all rights, title, and interest in and to the copyright in, or to enforce its exclusive right to home video distribution of, its Digital Content.

43.     Warner Bros. actively seeks to offer its Digital Content in the most cutting-edge manner available while vigorously protecting its intellectual property rights.  Its efforts to do so include entering into a Content Participant Agreement with DCP that grants Warner Bros. a non-exclusive and non-transferable license to use HDCP, and to cause or permit HDCP to be used, to protect Warner Bros.' Digital Content during distribution and transmission.  HDCP's implementation thus helps protect Warner Bros.' Digital Content from unauthorized access, copying, and distribution.

44.     Warner Bros. requires the use of HDCP in many of its distribution licenses for pay-per-view, video-on-demand, and other premium Digital Content delivery services to which Warner Bros. licenses its film and television programming.

**F.      Ace Deal's Unlawful Activities**

45.     Ace Deal makes, imports, offers to the public, provides, and otherwise traffics in the Panlong Devices.

46.     In common parlance, the Panlong Devices are "strippers."  Inserted between an HDCP-compliant source device and a non-HDCP-compliant sink device, a Panlong Device will remove (or "strip") HDCP encryption from copyrighted Digital Content as it is transmitted from the source device to the sink device.  As a result, the copyrighted Digital Content is rendered "in

-12-

the clear," making it vulnerable to unauthorized access, copying, and redistribution, and enabling

Panlong Device users to access, copy, and distribute copyrighted Digital Content without the

authority of the copyright owner.  Images of selected Panlong Devices are shown below.

|  |  |
|---|---|
| **HDMI 2.0 Splitter<br>with HDCP 2.2** | **3-Port HDMI<br>2.0 Switch** |




47.     The Panlong Devices are primarily designed or produced for the purpose of

circumventing HDCP; have only limited commercially significant purpose or use other than to

circumvent HDCP; or are marketed by Ace Deal or others acting in concert with Ace Deal with

Ace Deal's knowledge for use in circumventing HDCP.  The Panlong Devices descramble a

scrambled work, decrypt an encrypted work, or otherwise avoid, bypass, circumvent, remove,

deactivate, or impair HDCP, without the authority of plaintiffs.

48.     Ace Deal knew or should have known the purpose and use of the Panlong Devices

it offered to the public, provided, or otherwise trafficked in.  Ace Deal knew or should have

known that offering to the public, providing, or otherwise trafficking in the Panlong Devices was

unlawful.  Ace Deal's actions were willful and were taken for Ace Deal's own commercial

advantage or financial gain.

49.     Ace Deal makes, imports, offers to the public, provides, and otherwise traffics in

the Panlong Devices through Ace Deal's interactive commercial website, www.acepanlong.com,

-13-

and through additional retail and distribution channels, including other interactive commercial websites maintained by third parties.

50.     Ace Deal's actions with respect to the Panlong Devices render Digital Content vulnerable to unauthorized access, copying, and distribution, harm Warner Bros. by rendering its Digital Content vulnerable to unauthorized access, copying, and distribution, and impair the effectiveness of HDCP, jeopardizing DCP's licensing revenues.

51.     Ace Deal does not have a license from DCP or Digital Content owners to sell or distribute the Panlong Devices, and Ace Deal is not a licensee under a Content Participant Agreement.  In addition, the Panlong Devices do not comply with the Adopter Agreement, at least because the Panlong Devices allow HDCP-protected content to be displayed on non-HDCP-compliant devices.

52.     On information and belief, Ace Deal is well aware of plaintiffs' rights, the extent of the harm to plaintiffs' rights caused by the Panlong Devices, and plaintiffs' efforts to enforce their rights.  Nevertheless, Ace Deal continues to offer and promote for sale the Panlong Devices.

53.     On information and belief, Ace Deal has derived significant profit and financial benefit from its involvement in the manufacture, importation of, offering to the public, providing, and/or otherwise trafficking in the Panlong Devices.

54.     Table 1, below, identifies the Panlong Devices and, on information and belief, the version(s) of HDCP that each Panlong Device circumvents.

### TABLE 1

| Device Name | Model Number | HDCP Version(s) |
| --- | --- | --- |
| HDMI 2.0 Splitter with HDCP 2.2 ("HDCP 2.2 Splitter") | PL0102SP-2.0 | Version 2.2 Version 1.4 |
| Panlong HDMI 2.0 Splitter 4-Port with HDCP 2.2 | PL0104SP-2.0 | Version 2.2 Version 1.4 |

-14-

| | | |
|---|---|---|
| 3-Port HDMI 2.0 Switch | PL0301SW-2.0 | Version 2.2<br>Version 1.4 |
| 5-Port HDMI 2.0 Switch | PL0501SW-2.0 | Version 2.2<br>Version 1.4 |
| HDMI Extender | PL-373HE | Version 1.2 |
| Receiver for HDMI Extender | PL-373RX | Version 1.2 |
| HDMI Intelligent Switch Selector | 1114970707 | Unspecified |
| HDMI 3D Splitter v1.3 | 1114971180 | Unspecified |
| HDMI Amplifier Splitter | 1114971190 | Unspecified |
| HDMI to HDMI Optical Audio Extractor | DC-1114971067 | Unspecified |
| HDMI Audio Extractor Converter | DC-1115873488 | Unspecified |
| HDMI Matrix Switch | DC-PLM922E | Unspecified |
| UHD v1.3 1080P HDMI Splitter | PL-HDV-312 | Unspecified |
| HDMI Extender | PL-372A | Unspecified |
| Premium HDMI Splitter v1.3 4 Port | PL-814 | Unspecified |
| UHD v1.4 4K HDMI Splitter | PL-912 | Unspecified |
| Premium HDMI Splitter v1.4 4 Port | PL-914 | Unspecified |
| HDMI Splitter Amplifier | TALT-PN-734673497 | Unspecified |
| HDMI Switch 5 in 1 Certified for 4K | PL-PRO451S | Unspecified |
| 3 Port 4K UHD HDMI Switch | PL-SW431A | Unspecified |

55.     The HDCP 2.2 Splitter device has been tested to determine whether it circumvents the protection offered by HDCP.  That testing confirms that the HDCP 2.2 Splitter device transmits HDCP-protected content to non-HDCP-compliant devices by performing HDCP decryption, without the authorization of plaintiffs, and by avoiding, bypassing, removing, deactivating, and/or impairing the HDCP authentication process.  The HDCP 2.2 Splitter device does not re-encrypt HDCP-protected content after it is transmitted to a non-HDCP-compliant device, rendering the content "in the clear" and therefore vulnerable to unauthorized access, copying, and redistribution.

-15-

56.     On information and belief, and based on representations by Ace Deal, all of the Panlong Devices identified in Table 1, including but not limited to the HDCP 2.2 Splitter device, bypass, remove, deactivate, and/or impair the HDCP encryption technology as described in paragraph 55.

57.     Plaintiffs reserve the right to amend this Complaint to include additional Panlong Devices manufactured, imported, offered to the public, provided, and/or otherwise trafficked if plaintiffs' ongoing investigation identifies additional devices that circumvent HDCP.

58.     In addition to its violations of the DMCA, Ace Deal's advertising falsely implies that Ace Deal and the Panlong Devices are associated with or otherwise authorized or approved by plaintiffs, and that the Panlong Devices comply with HDCP encryption technology or are otherwise consistent with the terms of an HDCP license.  *See, e.g.*, Description, http://www.acepanlong.com/index.php?route=product/product&path=59_60&product_id=79 (describing a Panlong Device as "HDCP compliant") (Exhibit B).

59.     Ace Deal's false statements of fact, used to promote the Panlong Devices and encourage sales of the same, have the tendency to deceive a substantial segment of their audience by fostering a belief that Ace Deal and the Panlong Devices are associated with or otherwise authorized or approved by plaintiffs.

60.     In addition, Ace Deal's false statements of fact, used to promote the Panlong Devices and encourage sales of the same, are likely to deceive consumers into believing that the Panlong Devices are lawful when in fact they are not lawful, thereby encouraging consumers who would otherwise choose not to buy unlawful products to buy the Panlong Devices.

61.     Ace Deal has caused the false statements above, and others, to enter interstate and foreign commerce by, among other things, publishing those statements on Ace Deal's website and on others' websites.

-16-

COMPLAINT
CASE NO.
LEGAL129168054.1

**G.     The Harm Caused by Ace Deal**

62.     The Panlong Devices allow users to circumvent, unlawfully and without any authorization, the HDCP encryption technology that effectively controls access to Digital Content and protects the copyrights of owners of such content as set forth in the DMCA.  Once the HDCP protection is circumvented, the copyrighted content is unprotected, allowing the content to be copied, distributed, and uploaded to the Internet without authorization, enabling and dramatically increasing the risk of massive copyright infringement.

63.     The Panlong Devices harm Warner Bros. because the Panlong devices make Warner Bros.' Digital Content more vulnerable to unauthorized access, copying, distribution, and other unlawful uses.  Warner Bros. is damaged by the unauthorized and uncompensated use of Warner Bros.' Digital Content, which decreases the demand for such content through authorized distribution channels, such as home video, video-on-demand, and premium broadcast channels.  Accordingly, Warner Bros. is a person injured by Ace Deal's violations of the DMCA as alleged herein.

64.     In addition, the Panlong Devices harm DCP by impairing the effectiveness of HDCP, reducing the value of HDCP to DCP's licensees, and jeopardizing DCP's licensing revenue.  Accordingly, DCP is a person injured by Ace Deal's violations of the DMCA as alleged herein.

65.     As explained above, the Panlong Devices give rise to additional and unique harms to the extent that they circumvent HDCP 2.2 because, if HDCP 2.2 is compromised, then accessing, copying, reproducing, and performing UHD content without the authority of the copyright owner will become vastly easier.  As a result, Digital Content owners will be discouraged from creating and distributing UHD content, Digital Device makers will be

-17-

discouraged from manufacturing and selling devices that display UHD content, and consumers will be deprived of the benefits of UHD.

66.     In addition, copyright owners like Warner Bros. will be deprived of the benefits of providing UHD content, including the profits from providing such content, and DCP will be deprived of the benefits of licensing HDCP 2.2 to Digital Device makers and Digital Content owners who would otherwise adopt the UHD format.

67.     Plaintiffs are also harmed by Ace Deal's false advertising because it falsely implies that Ace Deal and the Panlong Devices are associated with or authorized by plaintiffs, and falsely implies that the Panlong Devices are lawful, thereby encouraging consumers who would otherwise choose not to buy unlawful products to buy Panlong Devices.

## V.     CAUSES OF ACTION

### COUNT ONE

**Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2) and § 1201(b)(1)**

68.     Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     Section 1201(a)(2) of the DMCA provides, in pertinent part:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component or part thereof, that—
>
>> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>>
>> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
>>
>> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

-18-

70.     Section 1201(b)(1) of the DMCA provides, in pertinent part:

No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

(A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;

(B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

71.     In the ordinary course of its operation, HDCP requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to a copyrighted work.  HDCP is therefore a technological measure that effectively controls access to works protected by the Copyright Act, including Warner Bros.' Digital Content, as set forth in the DMCA.

72.     In the ordinary course of its operation, HDCP prevents, restricts, or otherwise limits the ability to copy or otherwise use copyrighted works without the authority of the copyright owners.  HDCP is therefore a technological measure that effectively protects Digital Content and the rights of copyright owners therein by preventing end users from engaging in the unauthorized reproduction, adaptation, public performance, or distribution of Digital Content or portions thereof, as set forth in the DMCA.

73.     DCP enters into license agreements with Digital Device manufacturers and owners of copyrighted Digital Content, which pay DCP license fees for rights to employ or implement HDCP.  Warner Bros. is one such copyright owner, and has entered into a license agreement to

-19-

use or cause HDCP to be used to protect Warner Bros.' valid copyrights, duly and properly registered with the United States Copyright Office, in Digital Content.

74.     The Panlong Devices are primarily designed or produced for the purpose of circumventing HDCP; have only limited commercially significant purpose or use other than to circumvent HDCP; or are marketed by Ace Deal or others acting in concert with Ace Deal with Ace Deal's knowledge for use in circumventing HDCP.  The Panlong Devices descramble a scrambled work, decrypt an encrypted work, or otherwise avoid, bypass, circumvent, remove, deactivate, or impair HDCP, without the authority of plaintiffs.

75.     Ace Deal has been and is actively engaged in the business of manufacturing, importing, offering to the public, providing, or otherwise trafficking in the Panlong Devices.  Ace Deal knew or had reason to know the purpose and use of the Panlong Devices.  Ace Deal knew or should have known that manufacturing, importing, offering to the public, providing, or otherwise trafficking in the Panlong Devices was unlawful.  Ace Deal's actions were willful and were taken for Ace Deal's own commercial advantage or financial gain.

76.     By its wrongful conduct, Ace Deal has injured and, unless enjoined, will continue to injure plaintiffs, as set forth above.

77.     Plaintiffs are entitled to recover their actual damages and Ace Deal's profits resulting from Ace Deal's wrongful conduct under 17 U.S.C. § 1203(c)(2).  Alternatively, plaintiffs, at their election, are entitled to the maximum statutory damages permitted by the DMCA under 17 U.S.C. § 1203(c)(3).

78.     Ace Deal's continued wrongful conduct, unless enjoined and restrained by the Court, will cause grave and irreparable harm to plaintiffs, who have no adequate remedy at law. Moreover, if unabated, Ace Deal's misconduct will encourage others to develop circumvention devices that violate plaintiffs' rights and the DMCA.  Thus, plaintiffs are entitled to injunctive

-20-

relief under 17 U.S.C. § 1203(b)(1) and to an Order impounding any materials involved in Ace

Deal's violation of the DMCA under 17 U.S.C. § 1203(b)(2).

79.    Plaintiffs also are entitled to recover their attorneys' fees and costs of suit under

17 U.S.C. § 1203(b)(4) and (b)(5).

## COUNT TWO

### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)

80.    Plaintiffs incorporate by reference each of the allegations contained in paragraphs

1 through 79 of this Complaint as if fully set forth herein.

81.    The Lanham Act, 11 U.S.C. § 1125(a), provides a civil remedy for false

advertising and states in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or likely to be damaged by such act.

82.    Ace Deal has caused false statements of fact about the Panlong Devices to be

published on its websites and others' websites, including false statements to the effect that Ace

Deal and its activities are associated with, approved by, or authorized by plaintiffs, and false

statements to the effect that the Panlong Devices comply with the HDCP technology or are

otherwise compatible with a DCP license.

-21-

83.     Ace Deal's false statements of fact, used to promote the Panlong Devices and encourage sales of the same, have the tendency to deceive a substantial segment of its audience.

84.     Ace Deal has caused the false statements above to enter interstate and foreign commerce by, among other things, publishing those statements on Ace Deal's website and on others' websites.

85.     Plaintiffs have been, or are likely to be, injured as the result of the false advertising described above.

86.     Plaintiffs are entitled to monetary damages in an amount to be proved at trial to the fullest extent allowed under 15 U.S.C. § 1117, including but not limited to Ace Deal's profits earned by its unlawful conduct.

87.     The extensive and willful conduct by Ace Deal constitutes extraordinary circumstances that warrant the recovery of plaintiffs' attorneys' fees and costs associated with bringing this action under 15 U.S.C. § 1117.

## COUNT THREE

### Violation of Cal. Bus. & Prof. Code § 17500

88.     Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89.     Ace Deal's actions, as alleged herein, also constitute a violation of California law. Specifically, California Business and Professions Code § 17500 provides, in pertinent part:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any . . . advertising . . . including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . .

-22-

90.     Ace Deal published on its website, and caused to be published on others' websites, false and misleading statements, including statements falsely suggesting an affiliation with or authorization by plaintiffs and statements falsely suggesting that the Panlong Devices comply with the HDCP encryption technology, with the intent to induce purchases of the Panlong Devices.

91.     Ace Deal knew, or reasonably should have known, that the statements described in paragraph 90 were false, untrue, and misleading.

92.     There is a substantial likelihood that Ace Deal's misconduct has deceived the public and will continue to deceive the public.

93.     By its wrongful conduct, Ace Deal has injured and, unless enjoined, will continue to injure plaintiffs.

94.     Plaintiffs have been damaged in an amount to be proved at trial and are entitled to injunctive relief, restitution, and all other remedies permitted by law.

## COUNT FOUR

### Violation of Cal. Bus. & Prof. Code § 17200

95.     Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 94 of this Complaint as if fully set forth herein.

96.     Ace Deal's wrongful conduct, as alleged herein, also constitutes a violation of California's Unfair Competition Law.

97.     Specifically, California Business and Professions Code § 17200 prohibits, in pertinent part, "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

98.     Ace Deal has engaged in unfair and unlawful business practices by manufacturing, distributing, and/or selling the Panlong Devices.

-23-

99.     Ace Deal has engaged in unfair, deceptive, untrue, or misleading advertising by publishing advertising falsely suggesting that Ace Deal and the Panlong Devices are affiliated with or authorized by plaintiffs, and by falsely suggesting that the Panlong Devices are "HDCP compliant."

100.    Ace Deal knew, or reasonably should have known, that the statements described in paragraph 99 were false, untrue, and misleading.

101.    There is a substantial likelihood that Ace Deal's misconduct has deceived the public and will continue to deceive the public.

102.    By its wrongful conduct, Ace Deal has injured and, unless enjoined, will continue to injure plaintiffs.

103.    Plaintiffs have been damaged in an amount to be proved at trial and are entitled to injunctive relief, restitution, and all other remedies permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief:

1.     An award of compensatory damages, including plaintiffs' consequential and incidental damages, in an amount to be proved at trial.

2.     An award of Ace Deal's profits, gains, or unjust enrichment in an amount to be proved at trial.

3.     An award of statutory damages as allowed by law.

4.     An award to plaintiffs of their attorneys' fees and costs.

5.     An award of prejudgment and postjudgment interest at the maximum rate allowed by law.

6.     An accounting of all Ace Deal's profits, gains, and unjust enrichment, including without limitation Ace Deal's receipts and disbursements, profit and loss statements, and other

-24-

financial materials, statements and books, relating to Ace Deal's manufacture, importation, distribution, marketing, sale or other trafficking in the Panlong Devices.

7.      An accounting of all Panlong Devices, and any other devices or products that circumvent HDCP, that were or are within Ace Deal's possession, custody, or control.

8.      A declaration that Ace Deal's unauthorized importing, offering for sale, providing, or otherwise trafficking in the Panlong Devices violates 17 U.S.C. § 1201(a)(2) and (b)(1), and that Ace Deal committed such violation willfully and for the purpose of Ace Deal's direct or indirect commercial advantage or private financial gain.

9.      A preliminary and permanent injunction pursuant to 17 U.S.C. §§ 1203 and 502 enjoining Ace Deal, its agents, servants, and employees, and all those in active concert or participation with Ace Deal, from:

>    a.   importing, manufacturing, offering to the public, providing, using, or otherwise trafficking in any technology, product, service, device, component or part thereof (including the Panlong Devices) that is primarily designed or produced to circumvent HDCP;

>    b.   importing, manufacturing, offering to the public, providing, using or otherwise trafficking in any technology, product, service, device, component or part thereof (including the Panlong Devices) that has only limited commercially significant purpose or use other than to circumvent HDCP;

>    c.   importing, manufacturing, offering to the public, providing, using or otherwise trafficking in any technology, product, service, device, component or part thereof (including the Panlong Devices) that is marketed by Ace Deal or others acting in concert with Ace Deal for use in circumventing HDCP;

-25-

d.   importing, exporting, shipping, delivering, distributing, transferring, returning, holding for sale, destroying, or otherwise moving, storing, or disposing of any Panlong Devices or any other item or product bearing or used to reproduce an unauthorized copy of HDCP-protected Digital Content or any portion thereof;

e.   destroying, transferring, altering, moving, returning, concealing, or in any manner secreting any and all Panlong Devices, and any and all documents and records, including, without limitation, computer tapes, drives, or disks; business records; emails; supplier names and addresses; shipment records; books of accounts; receipts; specifications; packaging and containers; and other documentation relating or referring in any way to the importing, manufacturing, offering to the public, providing, or otherwise trafficking in Panlong Devices;

f.   manufacturing, marketing, selling, importing, supplying, or otherwise providing any product, device, or component thereof that contributes to or induces the unauthorized use or copying of HDCP-protected Digital Content; and

g.   advertising, promoting, or otherwise publishing any statements conveying or suggesting that Ace Deal and its activities are associated with, approved by, or authorized by DCP or its licensees, or that the Panlong Devices comply with the HDCP technology or DCP's license requirements.

10.   Preliminary and permanent injunctive relief, such as may later be requested before or at trial, requiring Ace Deal and all persons or entities in active concert or participation with Ace Deal, immediately:

-26-

COMPLAINT
CASE NO.
LEGAL129168054.1

     a.   to identify every supplier of every Panlong Device and component thereof; and

     b.   to take steps sufficient to ensure that all Panlong Devices in Ace Deal's

possession, custody, or control or that are in shipment are immediately seized,

inspected, and delivered into plaintiffs' possession.

11.     An Order pursuant to 17 U.S.C. §§ 1203 and 503 providing for the seizure,

impoundment, and ultimate destruction of all Panlong Devices within Ace Deal's custody or

control, and for the seizure and impoundment of all records documenting the manufacture, sale,

or receipt of Panlong Devices.

12.     An Order requiring Ace Deal to file with the Court and serve upon plaintiffs

within ten (10) days after the issuance of any injunction a written report, under oath, setting forth

in detail the manner and form in which Ace Deal has complied with the injunction.

13.     Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury as to all issues so triable.


DATED:  December 31, 2015          **PERKINS COIE** LLP


By:  _/s/  Susan D. Fahringer_
       Susan D. Fahringer, Bar No. 162978
       SFahringer@perkinscoie.com
       Sunita Bali, Bar No. 274108
       SBali@perkinscoie.com
       505 Howard Street, Suite 1000
       San Francisco, CA  94105
       Telephone:  415.344.7000
       Facsimile:  415.344.7050


       Attorneys for Plaintiffs
       Digital Content Protection, LLC and
       Warner Bros. Entertainment Inc.

COMPLAINT
CASE NO.
LEGAL129168054.1